IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| LAFAYETTE ENGLISH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12-CV-3293 |
| ) | |
| DR. OBAISI, ) | |
| ) | |
| Defendant.[1] ) | |

**OPINION GRANTING SUMMARY JUDGMENT**

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff proceeds pro se from his incarceration in Lincoln Correctional Center. Plaintiff's remaining claim is an Eighth Amendment claim against Defendant Dr. Obaisi for alleged deliberate indifference to Plaintiff's serious medical needs arising from an injury Plaintiff suffered in an accident at Logan Correctional Center.

Dr. Obaisi moves for summary judgment. After reviewing the parties' submissions, the Court concludes that Dr. Obaisi's motion must be granted. Plaintiff has no evidence that Dr. Obaisi's treatment approach, consisting essentially of rest and pain

---

[1] Defendant "Staci" was dismissed on July 18, 2013, because Plaintiff did not exhaust his administrative remedies against Staci.

medicine, amounted to deliberate indifference. In fact, the record shows that Plaintiff recovered fully from his injuries under that conservative approach.

## SUMMARY JUDGMENT STANDARD

"In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010). At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

## FACTS

On November 29, 2010, Plaintiff was riding with another inmate in the flatbed of a John Deere "Gator," an all-terrain, open-air work vehicle, on their way to repair a gate at the Logan Correctional Center. The Gator had two seats in the front and a flatbed in the back which lifts up for dumping. (Pl.'s Dep. pp. 62-

63.) Plaintiff and another inmate were riding in the back with their legs hanging over the end because the two front seats were already occupied by Plaintiff's supervisor and an inmate. Plaintiff was typically transported to his job on the grounds at the prison, even though the Gator was not designed to safely carry people in the flatbed and bore a warning label specifically advising against such transport.

On November 29, 2010, Plaintiff's supervisor was driving the Gator more quickly than usual because the tools needed to fix the gate had been left behind. (Pl.'s Dep. p. 34.) The Gator hit a bump, which catapulted Plaintiff and the other inmate riding in the back into the air. Plaintiff landed on his right buttock and lower back, and he believes he lost consciousness for a second or two. (Pl.'s Dep. 38-40.) Plaintiff lay still until an ambulance came with a stretcher and took him to the hospital, where he received a CT of his cervical spine and head and x-rays of his right hip and lumbar spine. (Dr. Obaisi's Aff. ¶ 4.)

The x-rays and CTs showed no "acute abnormalities," only mild degenerative changes attributable to normal aging—Plaintiff was 44 years old when the accident occurred. (Radiology Reports

dated 11/29/10, d/e 30-3, pp. 29-32; Dr. Obaisi's Aff. ¶¶ 5-14.) The lumbar spine x-ray showed that "L5 is sacralized bilaterally," which, according to Dr. Obaisi, "is a congenital condition where the L5 vertebral body is incorporated into the S1 vertebral body, where normally they are separated by a disc.  This condition can cause low back stiffness and chronic law back pain."  (Dr. Obaisi Aff. ¶ 6; lumbar spine x-ray, d/e 30-3, p. 29.)

Plaintiff was returned to Logan Correctional Center from the hospital that same day, where Plaintiff saw Dr. Obaisi.  After reviewing the hospital tests and examining Plaintiff, Dr. Obaisi diagnosed Plaintiff with an acute sprain of the right hip and low back.  Dr. Obaisi prescribed Motrin, gave Plaintiff a five day "lay-in" from work, and a low bunk permit for one month.  Dr. Obaisi also scheduled a follow-up in three days.  (Dr. Obaisi Aff. ¶ 7.)

The next day, Plaintiff saw Dr. Obaisi for complaints of back pain—Plaintiff had not yet received his Motrin—and also for complaints of blood in Plaintiff's stool.  Dr. Obaisi diagnosed internal hemorrhoids and gave Plaintiff a fecal occult blood test, which was negative.  Dr. Obaisi also prescribed Plaintiff Atenolol for

Plaintiff's headaches[2] and Zantac.  (Dr. Obaisi Aff. ¶ 8.)  Plaintiff believes that the bleeding was caused by the accident because Plaintiff had not had blood in his stool before the accident.  However, Plaintiff does not dispute Dr. Obaisi's conclusion that Plaintiff's bleeding was attributable to internal hemorrhoids.  Over the following months, Plaintiff continued to have occasional bleeding if he strained on the toilet, but eventually the hemorrhoids resolved on their own.  (Pl.'s Dep. Pp. 45-46.)

Over the two months following the accident, Plaintiff continued to report soreness in his low back and right buttocks where he had fallen, as well as occasional numbness in his leg and foot.  Dr. Obaisi examined Plaintiff about every two weeks in December and January:  on December 2, 10, and 27, 2010, and on January 11 and 26, 2011.  (Dr. Obaisi Aff. ¶¶ 40-60.)  Plaintiff does not dispute that during this time he had full range of motion without tenderness to touch.  Plaintiff also does not dispute that at the January 26th visit he described his back as slowly improving.  (Dr. Obaisi Aff. ¶ 58.)  Dr. Obaisi continued with the conservative treatment, prescribing rest, pain medicine, and some stretching

---

[2] Atenolol is generally prescribed for high blood pressure but is sometimes prescribed for migraine headaches, www.nlm.gov (search for Atenolol).

exercises. Plaintiff asked for an MRI, but Dr. Obaisi did not believe any further testing was indicated. (Dr. Obaisi Aff. ¶ 99; Pl.'s Dep. p. 46.)

Plaintiff saw Dr. Obaisi on March 14, 2011, this time reporting that his back pain was mild, with an occasional tingling in his leg. (Dr. Obaisi's Aff. ¶ 65.) Plaintiff's movements were within the normal range, as was a straight leg elevation test, which tests for pinched nerves. (Dr. Obaisi's Aff. ¶¶ 65-72.) Dr. Obaisi prescribed Motrin and ordered a blood test to check kidney function in light of Plaintiff's extended use of Motrin.

Dr. Obaisi next saw Plaintiff on May 12, 2011, for a follow-up appointment. At that time Plaintiff reported only occasional low back pain which responded well to Motrin. Plaintiff had also started working in the prison kitchen by that time.

A few months later, though, the pain returned. At the end of August, 2011, Plaintiff saw a nurse practitioner for complaints of low back pain and received a higher dose of Motrin. Plaintiff later received a handout with exercises for low back pain and saw Dr. Obaisi on December 29, 2011, for complaints of chronic low back pain. Dr. Obaisi prescribed Meloxicam/Mobic and Naproxen, but

that did not help Plaintiff's pain.  Plaintiff saw Dr. Obaisi the next month to report that the new medicines had not worked, whereupon Dr. Obaisi prescribed the Motrin again.  (Dr. Obaisi Aff. ¶¶ 17-21.)  The last time Dr. Obaisi saw Plaintiff was on May 12, 2012, when Dr. Obaisi renewed Plaintiff's prescription for 800 mg of Motrin, twice per day, for four months.  Id. at ¶¶ 21, 22.

Plaintiff transferred to Sheridan Correctional Center in August 2012.  He has not experienced any numbness in his foot and leg since then, and, as of the date of his deposition in June 2013, Plaintiff no longer needed pain medicine for his back.  (Pl.'s Dep. P. 59.).  As of the date of Plaintiff's deposition, Plaintiff was working five days a week in the kitchen, standing and washing dishes for over five hours at a time.  (Pl.'s Dep. pp. 13-15.)

Dr. Obaisi avers "[i]t is not surprising or indicative of any underlying problem beyond the diagnosed sprain that Mr. English continued to experience pain as a result of his fall.  Due to Mr. English being in his mid-forties and already showing osteoarthritis in his joints, the healing of the tendons, muscles, bones, and nerves from his back and hip sprain are expected to be slower than in a younger individual without arthritis." (Dr. Obaisi Aff. ¶ 15.)

ANALYSIS

The Eighth Amendment prohibits cruel and unusual punishment, which in the context of this case prohibits deliberate indifference to an inmate's serious medical needs. <u>Gomez v. Randle</u>, 680 F.3d 859, 865 (7th Cir. 2012).  Dr. Obaisi does not dispute that Plaintiff's back pain was a serious medical need.  The question then is whether a rational juror could find that Dr. Obaisi was deliberately indifferent to that need.

 A defendant acts with deliberate indifference when he consciously disregards a known and substantial risk of serious harm to an inmate.  <u>Rice ex rel. Rice v. Correctional Medical Serv.</u>, 675 F.3d 650, 665 (7th Cir. 2012)("An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it.").  Serious harm includes prolonged, significant and unnecessary pain.  <u>Smith v. Knox County Jail</u>, 666 F.3d 1037, 1040 (7th Cir. 2012)(("deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim").  Additionally, deliberate indifference may be inferred if a physician's decisions are "a

substantial departure from accepted professional medical judgment." Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)(*quoting* Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2009).

A juror could not find on this record that Dr. Obaisi was deliberately indifferent to any of Plaintiff's medical problems or pain. Plaintiff has no evidence that Dr. Obaisi's conservative treatment was outside the ordinary standard of care, much less a substantial departure therefrom. In fact, Plaintiff has fully recovered, which supports Dr. Obaisi's treatment approach. And, Plaintiff does not dispute that Dr. Obaisi was responsive to Plaintiff's complaints of pain, regularly prescribing pain medicine, a low bunk, exercises, and excuses from work. *See* Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866 (7th Cir. 2013)(refusal to give an inmate an MRI was not deliberately indifferent where doctor did not believe the test would help in treatment—inmate was given frequent exams, x-rays, painkillers, and a lower bunk).

Plaintiff's primary problem with Dr. Obaisi appears to be what Plaintiff described as Dr. Obaisi's dismissive and callous attitude. (Pl.'s Dep. p. 52)("Dr. Obaisi, it's like with him, when I was going over there, his –he—it wasn't as if he was really concerned about

my health.")  However, that alone does not rise to a constitutional violation.  A callous attitude may be evidence in support of deliberate indifference but only in conjunction with a treatment approach that is substantially outside accepted norms.

Plaintiff also focuses on the fact that he never would have been injured if his supervisor had not required Plaintiff to ride unsecured in the Gator's flatbed.  That may be, but Plaintiff's claim against the supervisor was dismissed because Plaintiff failed to exhaust his administrative remedies against the supervisor.  (7/18/13 order.)  In any event, the supervisor was at most negligent, and negligence does not violate the Constitution.  Gomez v. Randle, 680 F.3d 859, 864 (7th Cir. 2012)("[A] § 1983 plaintiff must establish that prison officials acted wantonly; negligence or gross negligence is not enough.").  Plaintiff himself did not believe that riding in the back of the Gator was dangerous until after the accident.  (Pl.'s Dep. p. 67).[3]

IT IS THEREFORE ORDERED:

---

[3] Q.  Did you ever complain about sitting in the back, having to sit in the back?
A.  No.
Q.  Did you ever feel it was dangerous to sit in the back before that day?
A.  No.  (Pl.'s Dep. p. 67.)

1) Dr. Obaisi's motion for summary judgment is granted (d/e 29).  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.  All deadlines and settings on the Court's calendar are vacated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal.  See Fed. R. App. P. 24(a)(1)(c).  If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.

ENTER:   January 31, 2014

FOR THE COURT:

                                                      **s/Sue E. Myerscough**
                                                     SUE E. MYERSCOUGH
                                    UNITED STATES DISTRICT JUDGE